IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

ARIEL DAVID PEREZ-ALMODOVAR,

    PLAINTIFF

                                        08 Civ 3853 (VM)(GWG)
    vs                                COMPLAINT [JURY TRIAL]

THE CITY OF NEW YORK, a
municipal entity, NEW YORK
CITY POLICE OFFICER,
NEW YORK CITY POLICE OFFICERS
"JOHN DOES", all of the
identified and non identified
persons in their individual and
in their official capacities,
NEW YORK CITY POLICE OFFICER
"JOE" SOUTH, in his individual
and his official capacities,

    DEFENDANTS
_____

                    I.    INTRODUCTION

    1.  This litigation arises out of the Plaintiff's stop and detention and custodial arrest on November 11, 2007 at or about 3:30 A.M. in the vicinity of Times Square [48th Street and Broadway], New York City, New York and the subsequent custodial detention until he was released after his arraignment in Court on November 11, 2007 at or about 7:00 P.M. and the preferral of charges against the Plaintiff and the subsequent prosecution of the Plaintiff until the charges as preferred were eventually dismissed on April 22, 2008; and the utilization of excessive, unnecessary, and unreasonable force by the police in association with the stop, detention and custodial arrest of the Plaintiff.

    2.  This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

3. The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of his rights.

## II. JURISDICTION

4. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

5. The facts which give rise to the State law claims have a common nucleus with the facts which give rise to the federal law claims. The federal and the pendent State law claims arise out of the same transaction and event.

6. The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

7. This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States and, as well, as guaranteed under the laws and Constitution of the State of New York.

## III. THE PARTIES

8. The Plaintiff is a Latino-American citizen of Dominican national origin and resident of the State of New York, the City of New York, and the County of New York.

9. The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which is authorized with, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

10. Defendants "John Does" and "Joe" South are New York City Police Officers and agents and employees of the City of New York. Although their actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and as guaranteed under the laws and Constitution of the State of New York, they were taken in and during the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City Police Officers and agents and employees of the City of New York.

## IV. ALLEGATIONS

11. This is a litigation which arises out of the Plaintiff's stop, detention, and custodial arrest on November 11, 2007 at or about 3:30 A.M. or thereabouts in the vicinity the Times Square area [48th Street and Broadway] and the subsequent preferral of charges against the Plaintiff. The litigation also arises out of the eventual April 22, 2008 dismissal of the charges associated with the Plaintiff's November 11, 2007 arrest and, as well, the unreasonable, unnecessary, and excessive use of force associated with the stop, detention, and custodial arrest of the Plaintiff on November 11, 2007.

12. The Plaintiff, who is a Latino-American citizen of Dominican national origin and resident of the City of New York, County of New York, State of New York, is twenty one [21] years of age.

13. The Plaintiff's birth date is February 27, 1986.

14. The Plaintiff is single.

15. When the Plaintiff is not otherwise living in Ithaca, New York where he attends college, the Plaintiff resides at 252 7th Avenue, Apt. # 6D, New York, New York 10001.

16. When the Plaintiff is not otherwise living in Ithaca, New York where he attends college, the Plaintiff resides at the afore-described address with his father.

17. The Plaintiff attends Cornell University where he is in his senior year.

18. The Plaintiff will graduate in the spring, 2008.

19. Thereafter, the Plaintiff expects to enter into the work force in a position with Citi's Global Markets Division as part of its 2008 analyst and sales trading class, one of the several positions and financial institutions from which the Plaintiff had successfully received job offers.

20. Prior to entering Cornell University in the fall, 2004, the Plaintiff attended Morristown Beard Prep School in New Jersey from which he graduated in the spring, 2004.

21. The Plaintiff was born in the Dominican Republic where the Plaintiff's parents were then attending medical school where he lived until he was three years of age. The Plaintiff then lived in Puerto Rico until age six when, with his parents, he came to the United States.

22. The Plaintiffs parents, both of whom are trained in the field of anthropology, are physicians. The Plaintiff's has a family medicine practice and the Plaintiff's father has a psychiatric practice.

23. The Plaintiff has two sisters, one of whom attends college at George Washington University and the other of whom is enrolled in a college preparatory lower/elementary school.

24. The incident, which gives rise to this Notice of Claim, occurred on November 11, 2007 when the Plaintiff was subjected to an unlawful and false custodial arrest and excessive and unlawful imprisonment and detention associated therewith, and, in the course of his arrest, when he was subjected excessive, unnecessary, and unreasonable force. Furthermore and on that date in question the Plaintiff was subjected to the malicious preferral of charges, the result of which required the Plaintiff, when he was released at his arraignment on the evening of November 11, 2007, to return to Court on subsequent occasions. Eventually, the charges were dismissed.

25. On November 9, 2007, the Plaintiff had returned to New York City from Ithaca to spend the weekend in New York City.

26. On November 10, 2007, the Plaintiff attended a party with friends from high school at a club in the Times Square area of New York City.

27. The purpose of the Plaintiff attending the party was to catch up with and spend some of his old friends from high school.

28. The party was being held as a post event gathering on the occasion of a world title boxing match which had occurred in the City on November 10, 2007 at Madison Square Garden.

29. The party was held at a restaurant in the Times Square area [in the vicinity of 48th Street and Broadway].

30. The Plaintiff arrived at the restaurant at or about 10:00 P.M. on November 10, 2007.

31. The Plaintiff left the restaurant at or about 3:00 A.M. on November 11, 2007.

32. As the Plaintiff was leaving the restaurant, he heard a bottle break in a crowd of people behind the Plaintiff.

33. The Plaintiff, then, moved toward the center of the walkway outside of the restaurant in order to ascertain what had occurred.

34. The Plaintiff stood on the sidewalk, away from the crowd.

35. The Plaintiff observed an individual, whom the Plaintiff had known from high school, appearing to be involved in a verbal exchange with a bouncer who was at the restaurant controlling access into and out of the restaurant and the area in the immediate vicinity of the entrance.

36. As the Plaintiff was observing the exchange, bouncers, who were in the vicinity, began to yell threatening comments at bystanders, including the

Plaintiff, in the area at which time and after the Plaintiff had a brief verbal exchange with one of the threatening bouncers to the effect that he should calm down, the Plaintiff proceeded to leave the by-standers in the area and go to the street in order to hail a taxicab and to go home.

37.  As the Plaintiff got to the street, uniformed New York City Police Officers approached the Plaintiff and, using inappropriate language, told the Plaintiff to "get the fuck out of here", "go home", "get out of her before we fuck your shit up" or something to that effect.

38.  The Plaintiff responded that he was "trying to catch a cab to go home" and that he ha a right to be there in order to try and get a cab.

39.  The approaching police officers repeated that the Plaintiff "better get the fuck out of here, just get out of here".

40.  In compliance with the police direction as crudely and rudely as it was put, the Plaintiff turned to his right and proceeded to walk away all of the time with his hand out still endeavoring to hail a taxicab.

41.   The Plaintiff walked fifteen feet or thereabouts when, from behind, he was grabbed on his shoulder by someone, quite obviously, whom the Plaintiff did not know since the grabbing came from behind.

42.  As the Plaintiff turned to ascertain who was grabbing him from behind, the Plaintiff was immediately and forcefully taken down to the ground, face first, by a police officer.

43.  The Plaintiff was laying face down on the street with his hands at his sides when what felt like two other individuals, whom the Plaintiff subsequently was able to identify as police officers, came down on the Plaintiff with one of the Officers placing a knee on the Plaintiff's back and the other Officer grabbing the Plaintiff's back and striking the right side of the Plaintiff's face.

44.  The Plaintiff also felt the left side of his face being repeatedly struck and pushed against the street.

6

45. Although the Plaintiff was doing nothing to resist and had done nothing whatsoever to cause him to be stopped and detained and taken the ground in the first place and had not resisted in any form or fashion when he was grabbed from behind, turned, and was forcefully taken to the ground, the officers were yelling "stop resisting".

46. At the time he was laying on the street his arms and hands were spread out and the Plaintiff had been given no instructions whatsoever as he was being subjected to unreasonable, unnecessary, and excessive force as previously described.

47. The Plaintiff was handcuffed and taken into custody.

48. The Plaintiff was placed in a police vehicle and was transported to the Midtown North Precinct, the Precinct in which, it is believed, the afore-described incident occurred.

49. At the Precinct, the Plaintiff was processed.

50. The Plaintiff believes that his arresting Officer was Police Officer South.

51. While the Plaintiff was being detained at the Precinct, the Plaintiff was, through Officer South, able to communicate with his father and the Plaintiff's father came to the Precinct although the Plaintiff was not permitted to see his father.

52. It is believed that, when at the Precinct, the Plaintiff's father spoke with Police Officer South and Police Officer South gave certain of the Plaintiff's possessions, which the Plaintiff had previously given over to Officer South, to the Plaintiff's father. At the Precinct, the Plaintiff personally spoke with his mother who resides in New Jersey.

53. During the course of the Plaintiff's processing and detention at the Precinct, it is believed that Police Officer South learned that the Plaintiff was a college student and that his parents were physicians.

54. Furthermore and during the course of the Plaintiff's processing and detention, it is believed that

7

Police Officer South learned that the Plaintiff had never previously been arrested.

54. When the Plaintiff was first brought into the Midtown North Precinct, he was brought before the desk where the Desk Officer could, quite obviously, observe the injuries inflicted upon the Plaintiff as a consequence of the unnecessary, excessive and unreasonable force inflicted on him at the time he was stopped, detained, and taken into custody [as described] since the injuries about the Plaintiff's face and head were quite obvious and self-evident.

55. Emergency Medical Services were called to the Precinct and, while at the Precinct, the Emergency Medical Services technicians administered some limited treatment for the self apparent injuries which the Plaintiff had endured as a consequence of the infliction by police of excessive, unnecessary, and unreasonable force associated with the stop, detention, and custodial arrest of the Plaintiff as previously described.

57. After some time at the Precinct when the foregoing transpired, the Plaintiff was transported to the Emergency Room at St. Luke-Roosevelt Hospital on 10th Avenue, New York City, New York.

58. At the St. Luke-Roosevelt Hospital, the Plaintiff received some emergency medical services for his injuries, treatment which was more thorough than the treatment which he had received from the Emergency Medical Services technicians at the Precinct.

59. While at the St. Luke-Roosevelt Hospital, representatives of the Internal Affairs Bureau of the New York City Police Department arrived and the Plaintiff spoke to them and informed them of what had occurred to him to that point in time.

60. The Plaintiff did not specifically request that the Internal Affairs Bureau representatives come to the Hospital or the Precinct but he believes that, because of the self evident injuries which he had endured and suffered in the course of his stop, detention, and custodial arrest, and his transport to the St. Luke-Roosevelt Hospital facility for service and treatment, the Internal Affairs Bureau personnel were dispatched to address the matter.

61. After the Plaintiff spoke to the Internal Affairs representatives, Police Officer South, who accompanied the Plaintiff to the Hospital facility, stated to the Plaintiff: "So what did you tell them [Internal Affairs]? I hope you didn't throw me under the bus. I'm going to speak with the ADA and let them know how much of a gentleman you are and that this was a big mistake".

62. The Plaintiff was returned from the Hospital facility to the Precinct. Officer South accompanied the Plaintiff.

63. When the Plaintiff re-entered the Precinct after having been transported to the Hospital and returned therefrom, Officer South said to the Plaintiff: "I didn't want to any anything before, but if you hadn't gone to the hospital, I could have just let everything else go and just given you a violation, but now it's too late and we have to do the whole process".

64. Officer South further stated: "Don't worry. I am going to speak with the ADA and make sure that they know the deal and my recommendation".

65. At some point thereafter, it is believed that the Plaintiff's father came to the Precinct and spoke with the Plaintiff's father.

66. After the Plaintiff's father came to the Precinct and Officer South spoke with the Plaintiff's father, Police Officer South stated to the Plaintiff: "I wish this never happened now that I know what a gentleman you are". He further stated: "I just met your father and I can tell you that he too is a real nice guy and a gentleman".

67. While at the Precinct, Officer South further stated, as well: "I hate say it but it looks like you were guilty by association".

68. Some time thereafter and while the Plaintiff was still at the Precinct, Police Officer South also stated to the Plaintiff at the Precinct that: "I spoke with the Assistant District Attorney [as Officer South had previously communicated to the Plaintiff at the Hospital he was going to do], and I want you to know that I told him the facts. I told him what a good guy you are, that you're

just trying to get back to school tomorrow and that I don't want to make a big deal of this at all. I also recommended that all of the charges be dropped and that they not make a big deal of all of this."

69.  Having stated the foregoing, Police Officer South told the Plaintiff that what he had said to the Assistant District Attorney had "to hold some weight".

70.  The Plaintiff was transported to Manhattan Central Booking where he was processed and held until his arraignment which occurred at or about 7:00 P.M. on November 11, 2007.

71.  At his arraignment, the Plaintiff pled not guilty and he was released on his own recognizance and directed to return to Court on January 15, 2008.

72.  After he was released at his arraignment, the Plaintiff returned to his home.

73.  The Plaintiff was in pain and on November 12, 2007, the Plaintiff went to see Doctor Calvin Matthews, an orthopedist in Bloomfield, New Jersey.

74.  The Plaintiff explained his symptoms and was examined by Doctor Matthews who informed the Plaintiff that he had sprained wrists, nerve damage, bruised ribs, TMJ, a strained neck, and bruises about his face and head.

75.  The Plaintiff returned to Ithaca where, because h was still suffering pain and trauma, he went to the Cornell University Medical Center and Gannett Health Center on November 13, 2007 and received the some diagnosis, which he had previously received from Doctor Matthews, from Doctor Hughes who was then present and attending at the Health Center.

76.  On November 21, 2007, the Plaintiff had returned to New York for the Thanksgiving holiday break and, because he was continuing to manifest the same symptoms and because he was still enduring pain and trauma, the Plaintiff went to the New York University Medical Center.  The Plaintiff saw a neurologist, Doctor Blanca Vasquez. The Plaintiff was diagnosed with a concussion, head trauma, and some nerve damage to his thumbs.  The Plaintiff was suffering some

10

diminished cognitive functioning, some memory loss, headaches, blurred vision, and flashbacks.

77. As a consequence of his examination on November 21, 2007, the Plaintiff was sent for an MRI.

78. On November 27, 2007, the Plaintiff went to the Cayuga Medical Center, Ithaca, New York for an MRI.

79. On November 28, 2007, the Plaintiff was contacted by an investigator from the New York City Civilian Complaint Review Board.

80. On January 15, 2008, the Plaintiff appeared in the Criminal Court, State of New York, City of New York, County of New York and the matter was adjourned.

81. Eventually the case was dismissed on April 22, 2008.

82. The Plaintiff committed no criminal offense or other offense whatsoever and no reasonable police officer could have believed that the Plaintiff committed any criminal offense or any other offense under and of the law to justify his, stop, detention, custodial arrest, further detention, the preferral of any charge, and his prosecution associated therewith.

83. There was no basis for the stop and detention and eventual custodial arrest of the Plaintiff by the New York City Police Officers, each of whom is an agent and employee of the City of New York.

84. While the actions and conduct of the New York City Police Officers were unlawful they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as New York City Police Officers and as agents and employees of the City of New York. It is believed that the arresting Officer's name is Officer South. It is believed that he is assigned to the Midtown North Precinct.

85. There was no probable cause for the arrest of the Plaintiff or for the preferral of charges against the Plaintiff or for the prosecution of the Plaintiff.

86. The Plaintiff was unlawfully stopped and detained, since there was absolutely no basis for the initial stop and detention, he was subjected to a false arrest and unlawful custodial detention and imprisonment and he was subjected to malicious prosecution, malicious abuse of criminal process and to excessive, unreasonable and unnecessary force associated with his stop, detention, and custodial arrest.

87. The actions and conduct herein described were propelled by the crime offense enforcement initiatives of the City of New York which is grounded in the philosophy of the "ends justifies the means" including but not limited to racial and national origin profiling that propels New York City Police Officers to make unlawful and otherwise unjustified stops and detentions of individuals simply because of the race of the individual as an African American and/or because of the apparent identity of the individual as a member of the Latino community and of some Hispanic based national origin.

88. Such crime offense enforcement initiative propels officers to make stops, detentions, and custodial arrests where there is no basis for the initial stop and detention and no probable cause for any arrest and, by such, to generate arrest statistics and to otherwise make examples of individuals in the hope that such would depress crime offenses.

89. The policy and practices have a disproportionate impact on African Americans and/or Latino individuals of some perceived Hispanic national origin who, because of their race and/or national origin or perceived national origin, are, disproportionately and for no other reason but the race factor and/or a Hispanic based national origin or perceived national origin factor, singled out for stops, detentions and arrests and derogatory treatment, based on racial considerations and bias, and discriminatory treatment based on racial factor and/or national origin based bias.

90. The Plaintiff was unlawfully stopped and detained and falsely arrested and subjected to national origin discriminatory conduct and subjected to malicious prosecution and the malicious abuse of criminal process and excessive and unreasonable and unnecessary force and excessive detention.

91. The actions, conduct, policies and practices and customs herein described violated the Plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

92. The actions, conduct, policies and practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including unlawful stop and detention, false arrest and imprisonment, malicious abuse of criminal process, and malicious prosecution, and assault and battery [in the form of the physical actions associated with the stop, detention and the taking of the Plaintiff into custody], Hispanic based national discrimination, and excessive detention.

93. The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

94. The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and physical pain and suffering.

95. The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

96. The Plaintiff has no other viable remedy at law but for the institution of this litigation in order to secure full and complete redress, vindication, and justice.

V. CAUSES OF ACTION

A. FIRST CAUSE OF ACTION

97. The Plaintiff reiterates Paragraph #'s 1 through 96 and incorporates such by reference herein.

98. The Plaintiff was unlawfully stopped and detained and subsequently falsely arrested and falsely imprisoned and detained in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

99. The Plaintiff suffered injuries and damages.

### B. SECOND CAUSE OF ACTION

100. The Plaintiff reiterates Paragraph #'s 1 through 99 and incorporates such by reference herein.

101. The Plaintiff was unlawfully stopped and detained and subsequently falsely arrested and falsely imprisoned and excessively detained in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

102. The Plaintiff suffered injuries and damages.

### C. THIRD CAUSE OF ACTION

103. The Plaintiff reiterates Paragraph #'s 1 through 102 and incorporates such by reference herein.

104. The Plaintiff was subjected to national origin discriminatory treatment in violation of his rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

105. The Plaintiff suffered injuries and damages.

### D. FOURTH CAUSE OF ACTION

106. The Plaintiff reiterates Paragraph #'s 1 through 105 and incorporates such by reference herein.

107. The Plaintiff was subjected to national origin discriminatory treatment in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

108. The Plaintiff suffered injuries and damages.

### E. FIFTH CAUSE OF ACTION

109. The Plaintiff reiterates Paragraph #'s 1 through 108 and incorporates such by reference herein.

110. The policies, practices and customs herein described propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the, First, Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

111. The Plaintiff suffered injuries and damages.

### F.   SIXTH CAUSE OF ACTION

112. The Plaintiff reiterates Paragraph #'s 1 through 111 and incorporates such by reference herein.

113. The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiff's rights under the laws and Constitution of the State of New York.

114. The Plaintiff suffered injuries and damages.

### G.   SEVENTH CAUSE OF ACTION

115. The Plaintiff reiterates Paragraph #'s 1 through 114 and incorporates such by reference herein.

116. Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of <u>respondeat</u> <u>superior</u>.

117. The Plaintiff suffered injuries and damages.

### H.   EIGHTH CAUSE OF ACTION

118. The Plaintiff reiterates Paragraph #'s 1 through 117 and incorporates such by reference herein.

119. The Plaintiff was subjected the treatment described because of his reasonable exercise of his First Amendment right to state to an Officer, in a reasonable manner and fashion, that, in substance, they were not acting in accordance with the policy of the City of New York that Officers are to treat all people in a courteous,

15

professional and respectful [CPR] manner and fashion. Such violated the Plaintiff's rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

120. The Plaintiff suffered injuries and damages.

### I. NINTH CAUSE OF ACTION

121. The Plaintiff reiterates Paragraph #'s 1 through 120 and incorporates such by reference herein.

122. The Plaintiff was subjected to the conduct as described and as a consequence of his reasonable exercise of his First Amendment rights of association and/or at the voicing of displeasure, in a reasonable manner and fashion, of the Officers' conduct in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

123. The Plaintiff suffered injuries and damages.

### J. TENTH CAUSE OF ACTION

124. The Plaintiff reiterates Paragraph #'s 1 through 123 and incorporates such by reference herein.

125. The Plaintiff was subjected to excessive, unnecessary and unreasonable force in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

126. The Plaintiff suffered injuries and damages.

### K. ELEVENTH CAUSE OF ACTION

127. The Plaintiff reiterates Paragraph #'s 1 through 126 and incorporates such by reference herein.

128. The Plaintiff was subjected to an assault and battery in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

129. The Plaintiff suffered injuries and damages.

### L.   TWELFTH CAUSE OF ACTION

130.   The Plaintiff reiterates Paragraph #'s 1 through 129 and incorporates such by reference herein.

131.   The Plaintiff was subjected to malicious abuse of criminal process in violation of his rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S. C. Section 1983.

132.   The Plaintiff suffered injuries and damages.

### M.   THIRTEENTH CAUSE OF ACTION

133.   The Plaintiff reiterates Paragraph #'s 1 through 132 and incorporates such by reference herein.

134.   The Plaintiff was subjected to malicious abuse of criminal process in violation of his rights as guaranteed under the laws and Constitution of the State of New York.

135.   The Plaintiff suffered injuries and damages.

### N.   FOURTEENTH CAUSE OF ACTION

136.   The Plaintiff reiterates Paragraph #'s 1 through 135 and incorporates such by reference herein.

137.   The Plaintiff was subjected to malicious prosecution in violation of his rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

138.   The Plaintiff suffered injuries and damages.

### O.  FIFTEENTH CAUSE OF CAUSE

139.   The Plaintiff reiterates Paragraph #'s 1 through 138 and incorporates such by reference herein.

140.   The Plaintiff was subjected to malicious prosecution in violation of his rights as guaranteed under the laws and Constitution of the United States.

141.   The Plaintiff suffered injuries and damages.

        P.   SIXTEENTH CAUSE OF ACTION

142. The Plaintiff reiterates Paragraph #'s 1 through 141 and incorporates such by reference herein.

143. The Defendant City of New York, if the City represents its Officers, uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

144. The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City Police Officers and, in their capacities as such, as agents and employees of the City of New York.

145. Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

146. The Plaintiff is entitled to recover against the City of New York for the conduct of its named and unnamed Officers under the federal claim jurisdiction pursuant to the doctrine of <u>respondeat superior</u>.

147. The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

> [a] Invoke pendent party and pendent claim jurisdiction.
>
> [b] Award appropriate compensatory and punitive damages.
>
> [c] Award appropriate declaratory and injunctive relief.
>
> [d] Empanel a jury.
>
> [e] Award attorney's fees and costs.
>
> [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
       April 23, 2008

>                                 Respectfully submitted,
>
>                                 /s/ James I. Meyerson_____
>                                 JAMES I. MEYERSON [JM 4304]
>                                 64 Fulton Street @ Suite # 502
>                                 New York, New York 10013
>                                 [212] 226-3310
>                                 [212] 513-1006/FAX
>                                 ATTORNEY FOR PLAINTIFF
>                                 BY:_____